## COCHRAN v. WARLICK.

Though the plaintiff apparently made out a prima facie case entitling him to a recovery of the land in dispute, by showing constructive possession by his grantor under color of title for more than seven years, yet as it was, under all the evidence, a question for determination by the jury whether or not this constructive possession was overcome by the weight of evidence, or whether or not defendant had shown a good prescriptive title by actual adverse possession under a claim of right for more than twenty years before the bringing of the action, the court ought not to have directed a verdict for the plaintiff, but should have submitted the case to the jury.

Argued June 20, — Decided July 13, 1900.

Complaint for land. Before Judge Candler. Campbell superior court. August term, 1899.

*J. F. Golightly* and *J. H. Longino*, for plaintiff in error.
*Dorsey, Brewster & Howell* and *L. S. Roan*, contra.

LEWIS, J. This was a complaint for land, brought in the superior court of Campbell county by J. W. Warlick against Mrs. M. B. Cochran, the land being a town lot in Fairburn, designated as No. 11 in block A. The abstract of titles attached to the petition was: 1st. Deed from Richard Moore, Alfred Austell, and Nathan Camp to Atlanta & LaGrange R. R. Co., now the Atlanta & West Point R. R. Co., dated November 5, 1850, conveying lots of land Nos. 66, 52, 47, 53, and the east half of 51, all in the 9th district of originally Fayette, but now Campbell county, Ga. 2d. Deed from Atlanta & West Point R. R. Co., formerly the Atlanta & LaGrange R. R. Co., to James C. Warlick, dated December 21, 1896, conveying lot of land No. 11 in block A in the town of Fairburn, said lot being part of lot No. 52 in the 9th district of originally Fayette, but now Campbell county. There is no proof in the record that the grantors of the Atlanta & LaGrange R. R. Co. ever had any title or possession of the land conveyed. Plaintiff, therefore, amended his petition, claiming that his predecessors in title paid for the land and held uninterrupted and peaceable possession of it, including the premises in dispute, under color of title for more than seven years. The defendant answered denying such possession and title in the plaintiff, alleging that if

the railroad company ever owned the land in dispute, it parted with its title to the same, and averring that she in good faith purchased the land, paid for it, and held actual, adverse possession of it for more than twenty years prior to the bringing of this suit. After hearing the evidence, the court instructed the jury to find for the plaintiff, which they accordingly did. Defendant made her motion for a new trial, on the general grounds; and on the further ground that the court erred in directing a verdict for the plaintiff. Upon the judgment overruling this motion error is assigned in the bill of exceptions.

The plaintiff below introduced the deeds an abstract of which was attached to his petition. It is clearly inferable from the evidence in the record that in 1850 the railroad company purchased several large tracts of land, including lot known as No. 52, and directly thereafter constructed its road which ran through lot No. 52, and upon that lot erected its depot buildings, and had been in possession and use of this property, that is, the track and the depot buildings, from that time to the present. There is no evidence that it was ever in actual possession of the lot in dispute. It is inferable from the testimony that this was not then a town, but simply open land, when the railroad bought, and that after the construction of its track and the location of its depot, the town of Fairburn by degrees grew up, and was built mainly upon this lot No. 52. Plaintiff's witnesses admitted that there had been for years a number of houses built on this lot, occupied as residences and business houses by private citizens, and some of them were located on lot No. 52 between the railroad depot and lot No. 11 in controversy. How the owners of these improved lots acquired possession of the same does not appear from the record, but the probability is that the railroad, after buying the lots, sold them off to individuals to occupy and improve. Upon notice, defendant's deed was introduced, which covered on its face only lot No. 9, upon which the dwelling-house occupied by her was erected. This lot adjoined lot No. 11, the property in dispute. Testimony was introduced in her behalf to the effect that, about the year 1852, these lots, Nos. 9 and 11, were occupied by one Smith, who built the dwelling thereon in which defendant lived, and that he placed in one enclosure by a fence both of

these lots, and for years cultivated, used, and occupied lot No. 11 as well as No. 9. The two lots thus surrounded by one enclosure with the dwelling thereon evidently presented the appearance of a single residence lot. There was no evidence showing the indication of any line whatever between lots Nos. 9 and 11. It was shown that several other occupants went into possession of the land after Smith vacated, that they used and occupied both lots, 9 and 11, keeping up the one enclosure around both until the year 1876. The defendant's husband, during that year, died, and his brother, according to the testimony, bought both lots for the defendant, paying his money therefor, taking deed to himself at the time, stating that he would collect money due his deceased brother's estate and reimburse himself for the sum thus expended, and would make deed to the defendant. After this purchase in 1876 he placed her in possession of the dwelling and the two lots, 9 and 11, which were then enclosed by a fence, and told her that she owned both of them, pointing them out to her. After this it seems he made her a deed, which included only lot No. 9. She did not read the deed. She thought there was really one lot in the entire enclosure, knowing nothing about the division of the town lots. She went into possession, repaired the fence that enclosed the two lots, planted an apple and peach orchard on the same, honestly believing that she owned both lots, having paid a consideration for both, to wit, over $200. She cultivated lot No. 11 in dispute, and several years during her occupancy of same rented it out and received rents therefor from her tenants. Upon this lot was erected a barn by one of them, with the privilege of his removing it if he desired, but he finally gave her the building. A stable was also built thereon. This is briefly an account of her occupancy from the time she moved on the place in December, 1876, down to the bringing of this action, more than twenty years thereafter. It does not appear from the evidence that the railroad company made any claim to this land or interfered with the possession and use thereof by the defendant until the spring or summer of 1896, when it sent agents there to inquire into this title to the land occupied by the defendant, including the property in dispute. She readily showed them the deed that her brother-in-law had given her;

and the agents then informed her that it covered only lot No. 9. These agents testified that she made no claim to lot No. 11 at the time, and, when they offered to sell, said she was not able to pay for it. She testified that while she did say she was not able to pay for it, she said she had been in possession of it for twenty years, and they told her that did not make any difference; that did not give her title. This was the first time she knew that the deed only covered a part of the property she had purchased. One of the agents offered to sell it to her for $50, and in his testimony gave as one reason for such a low offer, that he wanted to avoid this identical trouble that they were now going through with in this case.

. We have carefully read the testimony in this case, and the above is a fair report of it in substance. Now, when the plaintiff closed his testimony, he perhaps made out a prima facie case, upon the doctrine that where one buys a tract of land and receives therefor a deed, accurately describing it by metes and bounds, and goes into possession thereof, using and occupying a portion of the tract thus conveyed, he has constructive possession of the remainder, and it ripens into a prescriptive title if it be thus held for seven years under color of title. We do not mean to say that when his testimony was closed a prima facie case was not made out for the plaintiff; but it was only prima facie, and subject to be rebutted by proof. If an action, therefore, be brought by such a claimant of land against a party holding the property in dispute adversely, two defenses can be set up. First, that the plaintiff never had such possession, either actual or constructive, as would ripen into a title; and this could be shown by proving adverse possession in some other party, although defendant would fail to make out any title for herself or for such other persons holding adversely. Plaintiff must recover on the strength of his own title, and if such proof as that were offered in defense to his suit, it would show a want of prescriptive title in him, that is, a want of the necessary possession, either actual or constructive, as could possibly ripen into title. Another defense would be that the defendant had, prior to the bringing of suit, been in bona fide, peaceable, and adverse possession of the property in good faith as her own for twenty years; and this would show her title

paramount to that of the plaintiff, even if the plaintiff and those under whom he claims ever showed any title to the premises prior to her possession.   It is true that from the testimony of the agents of the railroad company, who inquired into the deeds of defendant, it might have been inferred that, while she was in possession, she virtually acknowledged ownership in the company, or at least not in herself.   This would perhaps have been a legitimate inference, if what the agents said was all the testimony in the case.   The jury, however, might have believed her version of the matter.   The defendant gives a different explanation of the conversation with these agents from what they related ; that when they spoke about her title she informed them of her twenty years possession, and then it was they told her that would not avail her.   If she was thus misled and induced to use language which could be construed into a quasi admission that she was not holding bona fide, it would by no means follow that the same was absolutely conclusive that her possession was not bona fide and under a claim of right, the more especially when she continued to hold adverse possession. As the case goes back for a new trial, of course, we do not mean to express any opinion in regard to the weight or preponderance of this evidence on either side, but we call attention to the above with the view of demonstrating that the judgment of the court deciding that the evidence demanded a verdict for the plaintiff was, in our opinion, erroneous, and that he should have submitted the case for consideration by the jury, giving them in charge the principles of law herein embodied.          *Judgment reversed.   All the Justices concurring.*